**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JOEL ALONSO ALANIS-MEJIA** | | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **CAMERON COUNTY, TEXAS AND** | § | **JURY TRIAL DEMANDED** |
| **RAUL GALARZA, & MARK A. SOLIS** | § | |
| **Defendants.** | § | |

<u>**COMPLAINT AT LAW**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Joel Alonso Alanis-Mejia, hereinafter called Plaintiff, complaining of and about Cameron County, Texas, Raul Galarza and Mark A. Solis hereinafter called Defendants, and for cause of action shows unto the Court the following:

**I.
NATURE OF THE CASE**

1.1    Plaintiff brings this action pursuant to 42 U.S.C. § 1983[1] against Defendants for the use of excessive force by government officials, causing substantial injury to Plaintiff, a pretrial detainee at Carrizales-Rucker Detention Center in Cameron County, Texas (sometimes referred to as "Carrizales").

1.2    Section 1983 authorizes the imposition of liability on a defendant who, under color of law, "subjects, or causes to be subjected, any citizen ... or other person ... to the deprivation of any rights" guaranteed by federal law.

---

[1] Hereinafter sometimes referred to as § 1983.

1.3    Plaintiff's claims against Defendants flow from both procedural and substantive due process guarantees of the Fourteenth Amendment to the United States Constitution against the use of excessive force by government officials on pretrial detainees.

1.4    Plaintiff, a pretrial detainee, asserts claims against Defendant GALARZA in his personal capacity for use of excessive force, against Defendant SOLIS in his personal capacity for excessive force and against Defendant Cameron County, Texas ("COUNTY" or "the COUNTY") for acting under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein..

## II.
## PARTIES AND SERVICE

2.1 Plaintiff, JOEL ALONSO ALANIS-MEJIA, is a person of the full age of majority and is a Texas citizen residing in Cameron County, Texas.

2.2 Defendant CAMERON COUNTY, TEXAS is a local government entity organized under the laws of the State of Texas and its Constitution. The policymaker and supervisor was Omar Lucio, the elected Sheriff of Cameron County, Texas at the time of the incident in question.

2.3 Defendant RAUL GALARZA is an employee of the Cameron County Sheriff's Department.

2.4 Defendant MARK A. SOLIS is an employee of the Cameron County Sheriff's Department.

2.5 Defendant the COUNTY employed Defendants GALARZA and SOLIS (detention officers) who, in the course and scope of their employment, were required to observe, watch over, and manage persons placed in custody within the COUNTY Jail.

2.6 At all times material throughout this complaint, Defendants GALARZA and SOLIS acted under color of state law, ordinance, and/or regulation, and in the course and scope of their employment with Defendant COUNTY.

### III.
### JURISDICTION AND VENUE

3.1    Jurisdiction exists in this court pursuant to 28 U.S.C. § 1343(a)(3) and 28 U.S.C. §1331, because this action is brought, inter alia, under 42 U.S.C. § 1983, to redress the deprivation of rights, privileges, and immunities guaranteed to Plaintiff under the Fourth and Fourteenth Amendments to the United States Constitution.

3.2    Venue is proper in this court pursuant to Title 28 U.S.C. §§ 1391(b)(1), because the defendants reside--and the cause of action arises--in the Southern District of Texas, Brownsville Division.

### IV.
### FACTS

*Carrizales Rucker-A Violent History*

4.1    The Carrizales-Rucker Cameron County Jail has a long history of using an unnecessary application of force on its detainees, a widespread pattern of its deputies and jailers using obvious excessive force at the Carrizales.

4.2     It is a history of determining that actions by employees that constitute an unnecessary use of force—specifically closed fisted strikes to the face—were justified and within the guidelines of the policy, procedure, and law, as is the case with Mr. Alanis. There existed an unwritten policy that detention officers could use whatever force they deemed necessary including excessive force, in maintaining order in Carrizales and that this was permissible within the Sheriff's department.

4.3     This unwritten policy of permissible use of excessive force has deep roots going back decades to Carrizales' opening. Sheriff Carnado Cantu ("Cantu") took office as Sheriff in 2001 and oversaw Carrizales when it first opened in 2002. In 2004, a correctional officer, Lt. Hilda Treviño, blew the whistle on fellow guards' mistreatment of inmates. That same year, Gail Hansen, a Chaplain ministering to inmates at Carrizales, provided evidence of commonplace illegal activities under Sheriff Cantu.

4.4     Sheriff Cantu was eventually found guilty of racketeering for taking kickbacks from drug traffickers and leaking information to criminal suspects among other crimes and was sentenced to 26 years in federal prison. During the Cantu years, there existed a widespread use of excessive force by officers in Carrizales. This was the start of Carrizales.

4.5     Sheriff Lucio took over in 2005. While promising to clean up the jail abuses by guards, including use of excessive force, that promise was never fulfilled. On numerous occasions throughout his tenure Carrizales was in non-compliance with the Texas Commission on Jail Standards. In fact, incarceration for minor and

non-capital crimes at Carrizales has proved fatal to more than 20 inmates since Lucio took office according to Texas Attorney General Custodial Inmate Death Reports.

4.6    Despite any official policies that may be in writing, Defendant Cameron County, Texas has had actual knowledge of, has permitted and condoned the custom and widespread practice of using unreasonable excessive force against inmates and detainees at Carrizales-Rucker. The practice continued to at least September 10, 2020, and beyond.

4.7    The guards at Carrizales are notorious for callous and punitive treatment towards inmates. Such conduct is exemplified by a widely disseminated video in July 2020 of a Carrizales guard pepper spraying a handcuffed inmate in the face while standing defenseless.[2]

4.8    In 2019, Gabriel Rivera was detained at Carrizales-Rucker. During an altercation, Jail Staff beat Rivera with their fists, while at least part of the time Rivera's wrists were handcuffed and his legs shackled. By the time the beating ended, Rivera had multiple facial fractures, multiple broken ribs, was no longer breathing and did not have a pulse. Rivera died from his injuries.

4.9    On September 22, 2020, less than two weeks after the incident with Alanis, a Carrizales guard used excessive force by performing a martial art "take-down" move on an inmate, Tampico Lopez, while Mr. Lopez was in wrist

---

[2] https://fb.watch/ihpIqZao0P/

restraints. The force used by the guard resulted in serious bodily injury to Mr. Lopez and led to criminal prosecution of the guard.

### *Plaintiff's Detention- Use of Excessive Force*

4.10    In August 2014, Plaintiff, JOEL ALONSO ALANIS-MEJIA ("Plaintiff" or "Alanis"), a registered nurse for over 35 years, suffered a massive stroke when two of three aneurysms in his brain ruptured producing subarachnoid hemorrhaging. After five brain surgeries and an extended course of medical treatment left Alanis alive, but disabled and debilitated. With his former career and passion no longer a possibility, Alanis began taxi driving to make ends meet.

4.11    On September 9, 2020, Alanis picked up a ride as was his normal course of business. Unfortunately for Alanis his passengers were being tracked for illegally crossing the border. Warrants were checked for Alanis and it was discovered that he had an outstanding warrant.  Alanis was unaware of the warrant and was certain it was erroneous. Alanis was transferred to Carrizales-Rucker Detention Center.

4.12    On September 10, 2020, Plaintiff, Joel Alonso Alanis-Mejia was in custody at Carrizales-Rucker located at 7100 Old Alice Road, Olmito, Texas 78575. A suicide screening was performed on Alanis, who had recently lost his parents, is disabled and suffers from numerous health issues, including having had five brain surgeries. Alanis had lost both of his parents in the prior three months, with his mother passing merely two weeks prior to his being detained.

4.13    During the suicide screening, Alanis expressed emotional despair due to the recent loss of his parents. Alanis broke down crying. Apparently annoyed by

6

Alanis' emotional breakdown, Cameron County jailer/detention officer Defendant Raul Galarza ("Galarza") unleashed a barrage of demeaning and cruel insults and barked at Alanis "quit crying like a little bitch. Quit fucking crying and man up motherfucker."

4.14    Defendant Galarza and Cameron County jailer/detention officer Defendant Mark Solis ('Solis") then began to ridicule Alanis, making demeaning remarks towards Alanis and laughing. In fact, with full knowledge that Alanis just lost his mother, something Alanis revealed as part of the suicide screening, Galarza and Solis intentionally escalated the interaction by commenting in a derogatory fashion about Alanis' mother.

4.15    The Guards, including Defendants Galarza and Solis, were aware that Alanis was claiming that he was being wrongfully detained and that any warrant being shown was a mistake. Despite knowing Alanis' fragile state of mind and being confused as to why he was even arrested, Defendants Galarza and Solis intentionally agitated Alanis and purposefully made comments which they intended to cause Alanis more stress and offend Alanis and it was their clear intention to do so.

4.16    Defendants Galarza and Solis acted unprofessionally and in a manner they knew would cause additional stress to Alanis' situation for no legitimate reason other than to bully Alanis because Defendants Galarza and Solis were in a position of authority, power and control to do so.

4.17    Following this interaction, Cameron County jailers/detention officers, Defendant Galarza and Defendant Solis, began escorting Alanis from booking to a jail cell. The intentional escalation and insults continued when one of the officers barked

at Alanis, "hurry up fat ass son of a bitch." Defendant Galarza then proceeds without provocation or justification to push Alanis forward. Startled, Alanis turned around, and this was the very opportunity Defendants Galarza and Solis were looking for. Defendants Galarza and Solis violently slammed Alanis into a wall and then tackled him to the ground with both officers landing on top of him.

4.18    With Alanis never posing a threat and lying on his back, Defendants continued their brutal attack on him as they grabbed his head and forcefully slammed him into the ground. Defendants Galarza and Solis knelt down on top of Alanis and, while holding him down, Galarza violently punched and hit Alanis' head, face and body as his blood spilled to the ground.

 

4.19    Alanis was left in this state for two hours, until he was taken to Valley Regional Medical Center at approximately 3:00 AM.

4.20    The attack, subsequent restraining, and continued attack were done maliciously and sadistically for the sole purpose of causing harm to Plaintiff. The Defendants escalated matters and continued to do so looking for the opportunity to

assault Plaintiff. It is not surprising that the Defendants found that opportunity to do so.

4.21    There have been multiple reports between 2012 and 2020 of Carrizales guards provoking inmates in order to get a reaction from the inmate and then beat the inmate.

4.22    In this case, that is exactly what occurred. Defendants provoked the Plaintiff and escalated the situation looking for any reason to beat the Plaintiff. After being pushed by the Defendants, Plaintiff, slightly turning around in a nonthreatening manner, was the opportunity which Defendants were looking for.

4.23    The Defendants seized the opportunity, they intentionally provoked and charged and beat Plaintiff Joel Alonso Alanis-Mejia.

4.24    The statements of the detention officers involved in this matter reveals a cover-up and evidence of the systemic and entrenched unwritten policy of use of excessive force.  The statements demonstrate the commonplace use of excessive force and the pressures placed on detention officers not necessarily involved in the assault, to cover for the assaulting guards.  Furthermore, the Sheriff's intentional disregard of these practices is a reaffirmation of this unwritten policy and the Sheriff's deliberate indifference to the use of excessive force in Carrizales.

4.25    This demonstrates the intent of the Defendants to assault Plaintiff and deprive him of his rights. It also demonstrates the unwritten policy and permissive use of excessive force.

4.26   Defendants Galarza and Solis' actions of slamming Plaintiff into a concrete wall, body slamming him onto the ground and punching him in the face was not done in a good faith effort to maintain or restore order or discipline; rather, it was done maliciously by Defendants Galarza and Solis for the sole purpose of causing harm to Plaintiff.

4.27   Each of the deputy Defendants acted under color of law to deprive Plaintiff of his rights under the Fourteenth Amendment against the use of excessive force on a pretrial detainee.

4.28   In an effort to cover up their unlawful assault on Alanis, the guards fabricated the events that occurred in their statements. Furthermore, the Defendants had the audacity to file and pursue an assault charge on Alanis. In their obviously coordinated statements, Defendants falsely claimed that Plaintiff Joel Alonso Alanis-Mejia struck Defendant Galarza in the chest. Furthermore, the Defendants' statements are called into serious question by the electronically recorded videotaped surveillance.

4.29   It is not surprising that following the attack on Alanis, upon information and belief, Defendant Galarza has been charged with family violence of assault impeding the breathing of the victim. While shift supervisor, Sergeant Juan Rivas has been charged with two counts of violation of civil rights of a person in custody.

4.30   Defendant Cameron County was on notice of a pattern of internal violations that were similar to what ultimately transpired when Plaintiff's constitutional rights were violated. Indeed, complaints about the use of excessive

force by detention officers have been levied and common knowledge for decades and inmates with minor offenses have often died in Carrizales.

4.31    On information and belief, Defendant Cameron County, Texas operates, manages, and supervises the Cameron County Sheriff's Department. At all times relevant hereto, Defendants Galarza and Solis were employees of the Cameron County Sheriff's Department and Defendant Cameron County, Texas ("County"). Defendant the County mandates, approves, and supervises the policies, procedures, practices, customs, hiring, training, retention, and supervision of all employees of the Cameron County Sheriff's Department and its officers, including the detention officers named in this lawsuit.

4.32    Defendant the County and the Sheriff's Department failed to adequately train and supervise the detention officers named herein and involved in this matter.

4.33    As a direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiff sustained severe mental and physical pain and suffering and physical injury in an amount that will be established at trial.

4.34    Plaintiff is entitled to compensation for the constitutional harms that all defendants inflicted upon him, including personal injury and loss of liberty.

**V.**
**NO IMMUNITY**

5.1    Defendants GALARZA and  SOLIS are not entitled to qualified immunity as a matter of law for the reason that the use of excessive force in this case violated Plaintiff's 14th Amendment constitutional rights, and these rights were clearly established at the time of the violation.

5.2    The detention officers' use of force was malicious and sadistic and done for the sole purpose of causing harm to Plaintiff, a pretrial detainee, rather than in a good faith effort to maintain order or restore discipline.

5.3    Numerous judicial authorities have long provided that the use of force against a pretrial detainee inmate is reserved for good faith efforts to maintain or restore discipline and that use of excessive force maliciously to cause harm to an inmate by a detention officer is a constitutional violation subjecting the detention officer to suit under § 1983.

5.4    The constitutional right to be free from excessive force is and was clearly established at the time force was used by Defendants GALARZA and SOLIS against Plaintiff. Clearly established law put Defendants GALARZA and SOLIS on notice that they could not beat Plaintiff for malicious purposes and no other reason. Plaintiff was not resisting discipline nor presenting a threat to the safety of Defendants GALARZA or SOLIS or anyone else, including other guards or inmates.

5.5    Deference must be given to the judgment of jail officials, who frequently must make decisions regarding the use of force under pressure and/or tense circumstances. However, the actions of Defendants GALARZA and SOLIS in this matter went beyond any decision requirement as to whether the use of force was necessary upon a detainee; in this matter, no pressure-laden or tense circumstances existed.

5.6     Giving deference to the judgment of jail officials, and for the other reasons provided herein, Defendants GALARZA and SOLIS are not entitled to qualified immunity.

5.7     Further, Defendants GALARZA and SOLIS had reasonable warning and were aware that punching and physically assaulting a non-threatening pretrial detainee where no need exists for the use of physical force (certainly not to the extent exerted in this case) could and/or would constitute a violation of an inmate's constitutional rights; they also knew and were aware that the use of force--and the amount of force they implemented--was far in excess of anything the situation called for and was utilized solely for the purpose of causing harm to Plaintiff and administering punishment they believed he deserved which was and is an improper and excessive use of force.

**VI.**
**CAUSES OF ACTION**

**COUNT 1 – 42 U.S.C. § 1983, 14TH AMENDMENT**
**(Right Against Use of Excessive Force Against Galarza in His Personal Capacity)**

6.1     Plaintiff incorporates by reference paragraphs 4.1 through 5.7 as if fully set forth herein.

6.2     Defendant Galarza is a person within the meaning Section 1983.

6.3     Under Section 1983, through the 4th and 14th Amendments to the United States Constitution, Plaintiff seeks vindication for the use of excessive force against him. Defendant Galarza is liable because: (1) he committed a constitutional violation; and (2) he was acting under color of state law when he committed the

constitutional violation and when he physically restrained and physically assaulted Plaintiff.

6.4    More particularly, Plaintiff suffered: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.

6.5    Defendant Galarza's use of force was done maliciously and sadistically for the sole purpose of causing injury to the Plaintiff rather than in a good faith effort to maintain or restore order or discipline.

6.6    Defendant Galarza's use of force was excessive considering: (a) the extent of the injuries suffered by Plaintiff; (b) whether there was a need for application of force; (c) the relationship between that need, if any, and the amount of force used; (d) the threat reasonably perceived, if any; and (e) any efforts made to temper the severity of a forceful response.

6.7    There was no threat that could reasonably have been perceived by Defendant Galarza and certainly none that could possibly have warranted his unreasonable use of excessive force.

6.8    Alternatively, Defendant Galarza's use of force was disproportionate to any alleged, actual or perceived "need."

6.9    Additionally, Defendant Galarza failed to temper the severity of his forceful response.

6.10    As a direct and/or proximate cause of Defendant Galarza's actions, Plaintiff suffered injury.

## COUNT 2 – 42 U.S.C. § 1983, 14TH AMENDMENT
**(Right Against Use of Excessive Force Against SOLIS, in Their Personal Capacities)**

6.11    Plaintiff incorporates by reference paragraphs 4.1 through 6.10 as if fully set forth herein.

6.12    Defendant Solis is a person within the meaning Section 1983.

6.13    Under Section 1983, through the 4th and 14th Amendments to the United States Constitution, Plaintiff seeks vindication for the use of excessive force against him. Defendant Solis is liable because: (1) he committed a constitutional violation; and (2) he was acting under color of state law when he committed the constitutional violation and when he physically restrained and physically assaulted Plaintiff.

6.14    More particularly, Plaintiff suffered: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.

6.15    Defendant Solis' use of force was done maliciously and sadistically for the sole purpose of causing injury to the Plaintiff rather than in a good faith effort to maintain or restore order or discipline.

6.16    Defendant Solis' use of force was excessive considering: (a) the extent of the injuries suffered by Plaintiff; (b) whether there was a need for application of force; (c) the relationship between that need, if any, and the amount of force used; (d) the threat reasonably perceived, if any; and (e) any efforts made to temper the severity of a forceful response.

6.17    There was no threat that could reasonably have been perceived by Defendant Solis and certainly none that could possibly have warranted his unreasonable use of excessive force.

6.18    Alternatively, Defendant Solis' use of force was disproportionate to any alleged, actual or perceived "need."

6.19    Additionally, Defendant Solis failed to temper the severity of his forceful response.

6.20    As a direct and/or proximate cause of Defendant Solis' actions, Plaintiff suffered injury.

## COUNT 3 - 42 U.S.C. § 1983, 14TH AMENDMENT
### (*Monell Claim* Against Cameron County, Texas)

6.21    Plaintiff incorporates by reference paragraphs 4.1 through 6.20 as if fully set forth herein.

6.22    At all material times, Plaintiff was a pretrial detainee for purposes of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

6.23    Defendant Cameron County is a "person" within the meaning of § 1983.

6.24    Under the Due Process Clause of the Fourteenth Amendment, Plaintiff had a right to be protected from unreasonable and excessive force as a pretrial detainee at Carrizales. Plaintiff also had a right to not be subjected to force maliciously and sadistically for the purpose of causing him injury. These rights were violated in part because of a lack of policies at the Carrizales concerning the appropriate use of force and minimal training requirements that did not include

16

ongoing in-service training, both of which resulted in the use of excessive force that caused Plaintiff to suffer a constitutional injury.

6.25    There was no official policy at the Jail to provide guidance on the excessive use of force and the avoidance of excessive force upon inmates, and no ongoing in-service training for Jail employees on the use of force. The absence of these policies and lack of training constituted deliberate indifference to the health, safety and welfare of inmates.

Specifically

(a) The Jail has no official policy on the use of force at the Jail. A detailed and discrete set of official policies and procedures for staff use of force is an absolutely essential element for the safe operation of a jail. Without these policies and procedures, jail personnel are not bound to safeguards and limitations for the use of force that require them to operate within appropriate constitutional strictures. Without a working definition of the use of force, guidelines for when force may be used, restrictions on force and prohibited conduct, and procedures governing when and how much force is applied, jail personnel are left to their own devices and practices that can result in dangerous and life-threatening harm like that inflicted on Plaintiff. The County's failure to train its Jail staff about the constitutional limits on the use of deadly force reflected the County's deliberate indifference to the highly predictable consequence of constitutional rights being violated. The unconstitutional consequences of failing to train on the use of force were so patently obvious that the County is liable without proof of a pre-existing pattern of constitutional violations. If Cameron County had in place a responsible use of force policy at the time of Plaintiff's escort, that escort would have been managed without the infliction of extreme violence, and Plaintiff would not have suffered serious and permanent injuries in custody.

(b) Apart from the initial training required of Jail staff when hired, Defendant Cameron County, Texas does not require or provide ongoing in-service training to its Jail staff. An ongoing in-service training program is an essential element for the safe operation of a jail. Not only do Jail staff require ongoing reminders to assure that they retain their initial training, but Jail operations, as well as the evolving law governing them, are highly dynamic over time and subject to modification and revision. Accordingly,

17

ongoing, and active training for jail personnel is essential in order for them to be current with safe operating practices and to ensure that unsafe practices are minimized. The County's failure to require and to provide ongoing in-service training is equivalent to providing no training at all, which reflects the County's deliberate indifference to the highly predictable consequence of constitutional rights being violated. The unconstitutional consequences of failing to require ongoing in-service training were so patently obvious that the County is liable without proof of a pre-existing pattern of constitutional violations. If Cameron County had required ongoing in-service training at the time of Plaintiff's escort, that escort would have been managed without the infliction of extreme violence, and Plaintiff would not have suffered serious and permanent injuries in custody.

6.26     Additionally, there was a policy and/or practice at the Jail to use excessive force upon inmates or that use of excessive force was a permissible tool to maintain discipline, compliance and order which were more important than constitutional limitations on the use of force.

6.27     These policies and practices were either officially adopted by law-making officers of the County, or by officials to whom the law-making officers had delegated policy-making authority.

6.28     Alternatively, these practices represent persistent, widespread practices of officials or employees that are so common and well-settled that they constitute a custom that fairly represents municipal policy. These policies and practices were tolerated or encouraged behavior that rose to the level of deliberate indifference to the health, safety and welfare of inmates. Specifically, it was the policy and/or practice at the Carrizales Jail to:

- use force when no force was necessary;

- fail to use de-escalation techniques to avoid the use of force, including upon inmates suffering from physical and mental disabilities

- use excessive and unreasonable force to maintain order in the Jail;

- use excessive and unreasonable force to control inmates who suffer from physical and mental disabilities

- use excessive and unreasonable force to calm the general environment of the Jail;

- use excessive and unreasonable force upon inmates who are physically restrained

- fail to adequately train Jail employees to safely restrain inmates, including inmates suffering from physical and mental disabilities; and

- fail to adequately train Jail employees to not use excessive and objectively unreasonable force upon inmates, including inmates suffering from physical and mental disabilities

6.29    The atmosphere created by the Sheriff and the senior ranking officials under the Sheriff created this unwritten policy permitting guards to exceed constitutionally permissible use of force which the guards could and did so freely and routinely.  This unwritten policy developed over many years and became widespread and entrenched in Carrizales and the Sheriff and the County supported this unwritten policy by their intentional failure to address it in any meaningful manner.

6.30    The County's official policymaker, the Cameron County Sheriff, had actual or constructive knowledge that its own officers were in the custom and/or practice of exercising excessive force and failed to take steps to prevent the use of excessive force exercised by officers. The unwritten but accepted policy at Carrizales was that guards had permission to use whatever force they deemed appropriate even if it was excessive and that such use of this excessive force was acceptable. In other

words, mistreatment of inmates including the excessive use of force was acceptable behavior and considered "part of the job."

6.31    Defendant Cameron County, Texas and the Cameron County Sheriff's Department showed deliberate indifference to the implementation of de-escalation training of its officers, which is the moving force behind the violation of Plaintiff's constitutional rights herein and is directly related to the events made the basis of this lawsuit. Indeed, there are numerous incidents of detention officers intentionally provoking inmates in order to seize the opportunity to assault them. This is what occurred to Plaintiff.

6.32    The County clearly failed to implement and enforce meaningful policies and/or procedures regarding the use of force and use of excessive force and to avoid the use of excessive force. The policymakers and budgeting bodies for the Sheriff's Office and County, including the Cameron County Commissioners Court and Sheriff Lucio, have demonstrated a deliberate indifference to the need for and implementation of this training, which indifference was the moving and direct force resulting in the violation of Plaintiff's constitutional rights.

6.33    Training and supervising detention officers in order to prevent the use of excessive force-was non-existent despite years of persistent issues with the use of excessive force. Carrizales and the County and Sheriff's Department have had decades to curb the abuses and get things right, however, they have refused to do so. The underlying constitutional violation in the case at bar is the use of excessive force.

6.34    The County's policies and procedure--or the lack thereof--in the prevention of its officers' use of excessive force were inadequate, and the County and its policymakers were deliberately indifferent in adopting necessary training policies regarding the same; thus, its inadequate training policies directly caused the violation of Plaintiff's constitutional rights.

6.35    The County was on notice of a pattern of internal violations that were similar to what ultimately transpired when Plaintiff's constitutional rights were violated.  Indeed, complaints about the use of excessive force by detention officers have been levied and common knowledge for decades and inmates with minor offenses have often died in Carrizales.

6.36    Furthermore, the single incident involving Plaintiff, was a highly predictable consequence of a particular failure to train and the County and Sheriff's failure to implement appropriate measures against the excessive use of force. The incident involving Plaintiff was an inevitable and predictable occurrence considering the decades of use of excessive force without adequate measures taken.

6.37    The Sheriff and senior ranking members of the Sheriff Department sanctioned conduct of guards using excessive force and demonstrated approval of guards using excessive force creating this unwritten policy and adopting it by: 1) standing by the guards even if excessive force is suspected or apparent; 2) failure to properly investigate excessive force instances; 3) permitting pervasive falsification of facts by involved and witnessing guards regarding instances of use of excessive force on inmates without consequences; and 4) failing to support guards which provide

information regarding another guard's use of excessive force or other improper treatment of inmates. This demonstrates that the Sheriff and County were deliberately indifferent to the use of excessive force which was so prevalent as to constitute an unwritten policy.

6.38    Such determinations by senior officials described herein to find guards time and time again did not use excessive force and the persistent practices of using excessive force were a driving force behind injuries to inmates, including Plaintiff Joel Alonso Alanis-Mejia.

## VII.
## DAMAGES AS TO ALL DEFENDANTS

7.1    Plaintiff suffered the following damages proximately caused by Defendants' wrongful conduct described herein:

a)    physical pain and suffering in the past and future;

b)    mental anguish in the past and future;

c)    medical expenses in the past and future;

d)    physical impairment in the past and future;

e)    disfigurement in the past and future;

f)    court costs; and

g)    pre- and post-judgment interest as allowed by law.

## VIII.
## EXEMPLARY DAMAGES AS TO DEFENDANT DETENTION OFFICERS

8.1    The conduct of Defendants GALARZA and SOLIS was done with malice, entitling Plaintiff to exemplary damages.

## IX.
## COSTS AND ATTORNEY FEES

9.1     Plaintiff is entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988(b).  Therefore, Plaintiff requests the Court to award costs and attorney's fees incurred in the prosecution of this litigation.

## X.
## TRIAL BY JURY

Plaintiff demands a trial by jury.

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein and that, upon final trial, Plaintiff be awarded judgment against Defendants for actual damages, exemplary damages, pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, and all other relief, legal and equitable, to which Plaintiff is entitled.


Respectfully submitted,

**MATHIAS RAPHAEL PLLC**
13101 Preston Road, Suite 501
Dallas, Texas 75240
Office: 214-739-0100
Facsimile: 214-739-0151
Damon@mrlaw.co
Ori@mrlaw.co


23

BY:_____
Damon Mathias
State Bar No. 24080170
So District No. 2383085
Ori Raphael
State Bar No. 24088273
So District No. 3191989
**ATTORNEYS FOR PLAINTIFF**